Ryan M. Best, WSBA 33672
Michael R. Merkelbach, WSBA 55389
Jacob A. Mark, WSBA 54280
Best Law PLLC
905 W. Riverside, Suite 409
Spokane, WA 99201
Phone: (509) 624-4422
Fax: (509) 703-7957
Email: ryan.best@bestlawspokane.com
Attorney for Plaintiffs

# IN UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RUSSELL JONES, <br><br> Plaintiff, <br><br> vs. <br><br> GRANT COUNTY HOSPITAL DIST. NO. 1 d/b/a SAMARITAN HOSPITAL, a Washington Municipality, JULIE WEISENBURG, individually and as an agent of GRANT COUNTY HOSPITAL DIST. NO. 1 d/b/a SAMARITAN HOSPITAL, and JULIE WEISENBURG and JOHN DOE WEISENBURG, the marital community thereof. <br><br> Defendants. | **COMPLAINT FOR DAMAGES AND JURY DEMAND** |

Plaintiff Russell Jones, by and through his attorneys, Ryan Best, Jacob Mark, and Michael Merkelbach, of Best Law, PLLC, and for causes of action against the above-named Defendants, complains and alleges as follows:

**COMPLAINT FOR DAMAGES
AND JURY DEMAND-1**

## I.   PARTIES, JURISDICTION, AND VENUE

1.1   Russell Jones is a resident of Grant County, which is within the Eastern District of Washington.

1.2   Russell Jones (hereinafter "Mr. Jones") is an Advanced Registered Nurse Practitioner and worked for Defendant Grant County Public Hospital District No. 1 d/b/a Samaritan Healthcare ("Samaritan") from July 24, 2017 until Samaritan simultaneously terminated his employment and revoked his clinical privileges on April 5, 2019 – ten days before Mr. Jones was to start his new position with Sound Physicians Emergency Medicine of Washington, PLLC using his clinical privileges at Samaritan Hospital.

1.3   Samaritan is a Washington Municipality conducting business within the Eastern District of Washington and previously employing Russell Jones.

1.4   Julie Weisenburg and John Doe Weisenburg are married residents of Grant County.

1.5   Julie Weisenburg is an employee and agent of Defendant Samaritan.

1.6   Plaintiff brings this action against Julie Weisenburg as an employee/agent of Samaritan and in her individual capacity.

1.7   The Defendants' alleged unlawful acts and omissions were committed within the jurisdiction of the United States District Court for the Eastern District of Washington.

COMPLAINT FOR DAMAGES
AND JURY DEMAND-2

1.8 The Federal Court for the Eastern District of Washington has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

1.9 Venue is proper in the Federal Court for the Eastern District of Washington under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) as the Defendant resides in the Eastern district of Washington and the acts and omissions took place within the Eastern District of Washington.

1.10 Jurisdiction and Venue are thus proper.

## II.   FACTS

2.1 Mr. Jones started working at Samaritan as an ARNP on July 24, 2017.

2.2 On February 12, 2019, Sound Physicians Emergency Medicine of Washington, PLLC ("Sound Physicians") – the soon-to-be new owner of Samaritan Hospital – offered Mr. Jones a position as a Nurse Practitioner starting April 15, 2019.

2.3 A true and correct copy of Sound Physicians' February 12, 2019 job offer to Mr. Jones is attached to this Complaint as **Exhibit 1**.

2.4 On March 18, 2019, Mr. Doe[1] came to the Samaritan Hospital

---

[1] The actual patient's name is known to all parties and is only withheld from this pleading to protect the privacy of the patient. The actual patient will be referred to as Mr. Doe and the patient's spouse will be referred to as Mrs. Doe.

COMPLAINT FOR DAMAGES
AND JURY DEMAND-3

emergency department seeking treatment (a second time) for rectal bleeding that had worsened since his first treatment at Samaritan Hospital.

2.5 On March 7, 2019, Samaritan first treated Mr. Doe for rectal bleeding.

2.6 At 5:04 p.m. on March 18, 2019, Mr. Doe returned to the Samaritan Hospital Emergency Department because the bleeding had worsened.

2.7 Dr. Frank was the doctor assigned to Mr. Doe's treatment.

2.8 Samaritan, through Dr. Frank and Mr. Jones, performed several tests, including a mandatory digital rectal examination, to diagnose and treat Mr. Doe's rectal bleeding.

2.9 At 6:14 p.m., Mr. Jones ordered the following tests:

    2.9.1 CBC, PLT, & Auto Diff;

    2.9.2 Comprehensive Metabolic Panel;

    2.9.3 Partial Thromboplastin Time; and

    2.9.4 Prothrombin Time.

2.10 At 7:05 p.m. on March 18, 2019, Mr. Jones discussed the test results with Mr. and Mrs. Doe in the Doe's hospital room.

2.11 Between 7:13 p.m. and 7:14 p.m. on March 18, 2019, Samaritan discharged Mr. Doe, provided Mr. Doe with his discharge paperwork, and took vitals for Mr. Doe at discharge.

2.12 Mr. Doe was in the emergency department for over two hours.

2.13 In the two hours that Mr. Doe was present, no Samaritan employee heard or saw anything suggesting that Mr. Jones assaulted, or in any way mistreated, Mr. Doe – as verified by two separate investigations; one performed by Samaritan and one performed by the Nursing Care Quality Assurance Commission ("NCQAC").

2.14 At approximately 8:45 p.m. on May 18, 2019, Mrs. Doe sent a complaint, through Facebook Messenger, alleging that Mr. Jones sexually assaulted Mr. Doe.

2.15 After learning of the allegation against Mr. Jones, Defendants Weisenburg and Samaritan suspended Mr. Jones's employment, pending the result of Samaritan's investigation of the allegations.

2.16 Defendants Samaritan and Weisenburg chose to handle the March 18, 2019 allegation "via employment versus on the medical side of things."

2.17 Despite allegedly finding the Mrs. Doe sexual assault allegations to be credible, Samaritan did not report Mr. Jones to the police, did not report Mr. Jones to the NCQAC for sexual misconduct, nor did Samaritan revoke Mr. Jones's clinical privileges in order to protect the public.

2.18 On April 4, 2019, Samaritan informed Mr. Jones that it planned on terminating his employment at Samaritan, and Samaritan invited Mr. Jones to defend his employment the next day at a hearing on April 5, 2019.

COMPLAINT FOR DAMAGES
AND JURY DEMAND-5

2.19  A true and correct copy of Samaritan's April 4, 2019 letter is attached to this Complaint as **Exhibit 2**.

2.20  On April 5, 2019, Defendants Samaritan and Weisenburg terminated Mr. Jones's employment at Samaritan.

2.21  Mr. Jones's being employed at Samaritan was not a condition for his being eligible to start his new position as a Nurse Practitioner for Sound Physicians, scheduled to begin 10 days after Ms. Weisenburg fired him.

2.22  Defendants Samaritan and Weisenburg simultaneously revoked Mr. Jones's clinical privileges at Samaritan Hospital and terminated Mr. Jones's employment at Samaritan Hospital on April 5, 2019.

2.23  Samaritan testified that it has a policy to routinely revoke a provider's clinical privileges automatically when Samaritan terminates a provider's employment.

2.24  Samaritan intentionally handled Mr. Jones's termination process "via employment versus on the medical side of things."

2.25  Because Samaritan was not using "the medical side of things," Samaritan never initiated the peer-review process.

2.26  Defendants Samaritan and Ms. Weisenburg knew that terminating Mr. Jones's employment and revoking his clinical privileges would require them to "pursue 2 paths simultaneously 1) HR [and] 2) Medical Staff . . . peer review[.]"

2.27  Despite knowing it needed to pursue a peer review process to revoke Mr. Jones's clinical privileges, Defendant Samaritan never gave Mr. Jones notice that it was considering revoking Mr. Jones's clinical privileges at Samaritan Hospital.

2.28  Defendant Samaritan never gave Mr. Jones the opportunity to defend his clinical privileges at Samaritan Hospital before Ms. Weisenburg revoked his clinical privileges on April 5, 2019.

2.29  Defendants Samaritan and Ms. Weisenburg intended to revoke Mr. Jones's clinical privileges without ever pursuing the required peer review process.

2.30  Neither Defendant Samaritan nor Defendant Ms. Weisenburg provided Mr. Jones with notice informing him that Defendants suspended his clinical privileges pending the results of a post-deprivation hearing, or some other formal hearing wherein Mr. Jones could advocate for his innocence and defend his clinical privileges, his professional reputation, and/or his eligibility for his new job with Sound Physicians.

2.31  Neither Defendant Samaritan nor Defendant Ms. Weisenburg provided Mr. Jones with notice informing him that his clinical privileges were potentially going to be revoked on April 5, 2019.

2.32  Because Defendants Samaritan and Weisenburg revoked Mr. Jones's clinical privileges at Samaritan Hospital simultaneously when they terminated Mr.

Jones's employment at Samaritan Hospital on April 5, 2019, Mr. Jones could no longer satisfy section 1.A.iii of his Employment Agreement with Sound Physicians, one of the conditions Mr. Jones was required to satisfy in order to be eligible to start working for Sound Physicians as a Nurse Practitioner at Samaritan Hospital.

2.33 Because Sound Physicians required Mr. Jones to have clinical privileges at Samaritan Hospital and Defendants Samaritan and Weisenburg revoked Mr. Jones's clinical privileges at Samaritan Hospital 10 days before Mr. Jones's new job was supposed to start, Sound Physicians rescinded its job offer for Mr. Jones to work as a Nurse Practitioner at Samaritan Hospital.

2.34 Had Samaritan not wrongfully terminated his privileges, Mr. Jones would have started work for Sound Physicians on April 15, 2019.

2.35 Defendants Samaritan and Weisenburg knew that Mr. Jones's Employment Agreement with Sound Physicians was scheduled to start on April 15, 2019.

2.36 If Mr. Jones started his Nurse Practitioner job with Sound Physicians, Defendants Samaritan and Weisenburg would not be able to terminate Mr. Jones's employment as easily as they did.

2.37 On March 18, 2019, Defendants Samaritan and Weisenburg knew that

Samaritan would not be able to conduct a peer-review process *and* perform an "employment matter" investigation before April 15, 2019.

2.38 Defendants Samaritan and Weisenburg knew that there were separate procedures for terminating non-provider employees and medical providers whose clinical privileges were at risk of revocation.

2.39 Despite knowing about the separate procedures, Defendants chose not to pursue "the medical provider side of things" when handling the March 18, 2019 allegations against Mr. Jones.

2.40 Defendants Samaritan and Weisenburg used the March 18, 2019 allegations against Mr. Jones as a pretext to terminate Mr. Jones's employment at Samaritan, and used the employment termination to terminate Mr. Jones' privileges at Samaritan Hospital without due process to terminate his ability to work at Samaritan Hospital.

2.41 Defendants Samaritan and Weisenburg used Mr. Jones's employment termination as a basis for revoking his clinical privileges at Samaritan Hospital.

2.42 Defendant could have suspended Mr. Jones's clinical privileges and scheduled a post-deprivation hearing, but since Samaritan's investigation of the March 18, 2019 allegations against Mr. Jones could not be corroborated, and because Mr. Doe's statements were contradicted by all available independent

COMPLAINT FOR DAMAGES
AND JURY DEMAND-9

evidence, Defendants knew that a peer-review would not result in the revocation of Mr. Jones's clinical privileges at Samaritan Hospital.

2.43  Further, Defendants needed to terminate Mr. Jones' privileges prior to his beginning work for Sound Physicians.

2.44  If Mr. Jones's clinical privileges were not terminated, he would have been able to start his new Nurse Practitioner job with Sound Physicians, and Defendants would not have been able to stop Mr. Jones from working for Sound Physicians.

## III.    CAUSES OF ACTION

### A. Violations of 42 U.S.C. § 1983 Civil Rights – Samaritan Intentionally Denied Mr. Jones's Due Process Rights

3.1  Mr. Jones's employment arrangement with Samaritan is distinct from his clinical privileges at Samaritan.

3.2  Mr. Jones's clinical privileges and medical reputation are protected property interests subject to procedural protections separate from the procedural protections for Mr. Jones's employment arrangement with Samaritan.

3.3  Samaritan simultaneously revoked Mr. Jones's privileges when it and Ms. Weisenburg terminated Mr. Jones on April 5, 2019.

3.4  Samaritan never gave Mr. Jones notice of a post-deprivation hearing after revoking Mr. Jones's privileges on April 5, 2019.

COMPLAINT FOR DAMAGES
AND JURY DEMAND-10

3.5   To date, Samaritan has never performed a peer-review of Mr. Jones related to Samaritan's April 5, 2019 revocation of Mr. Jones's privileges.

3.6   Ms. Weisenburg who is not a physician terminated Mr. Jones's privileges based on her sworn testimony or Samaritan as Samaritan's corporate representative.

3.7   By revoking Mr. Jones's clinical privileges at Samaritan Hospital on April 5, 2019, Mr. Jones could not satisfy the section 1.A.iii of his Employment Agreement with Sound Physicians.

3.8   Samaritan has a custom and policy of revoking a provider's clinical privileges without medical review whenever Samaritan terminated a provider's employment, as testified by Samaritan's 30(b)(6) designee.

3.9   Samaritan's established custom or practice of simultaneously revoking clinical privileges and terminating employment of a medical provider, even when Samaritan denied the medical provider a separate opportunity to defend his clinical privileges – or advocate for himself at all regarding his defense of his clinical privileges – deprived Mr. Jones of his constitutional right to due process.

3.10  Neither Samaritan nor Ms. Weisenburg provided Russell Jones notice or an opportunity to participate in Samaritan's privilege processes prior to Defendants' terminating his employment and simultaneously revoking his clinical privileges based on his employment termination.

COMPLAINT FOR DAMAGES
AND JURY DEMAND-11

3.11  Neither Samaritan nor Ms. Weisenburg provided Russell Jones notice or meaningful opportunity to participate in a peer-review proceeding to defend his clinical privileges.

3.12  On April 5, 2019, Samaritan and Ms. Weisenburg terminated Mr. Jones and simultaneously revoked his clinical privileges at Samaritan Hospital based substantially on a March 18, 2019 patient complaint that Samaritan never fully investigated and which the Department of Health dismissed for insufficient evidence.

3.13  After March 18, 2019, Samaritan chose to pursue discipline against Mr. Jones as an "employment matter" and chose not to pursue a peer-review driven method of discipline.

3.14  Mr. Jones was damaged due to these institutional policies utilized by Samaritan.

3.15  Defendants intentionally deprived Mr. Jones of his constitutional right to due process by acknowledging the need to perform a peer review, choosing to remain silent about any peer review process, provided no notice of its intent to revoke Mr. Jones's clinical privileges, and revoking Mr. Jones's privileges without allowing him to advocate for himself or defend his license and without review by any medically trained personnel. All of this resulted in damages to Mr. Jones and the loss of his employment with Sound Physicians.

## IV. PRAYER FOR RELIEF

Mr. Jones respectfully demands a jury trial and further compensation for all injury and damages suffered. To wit:

**A.** Both economic and non-economic damages suffered individually and by the marital community in amounts to be proven at trial including, but not limited to: the salary Mr. Jones would have earned had he not lost his clinical privileges without due process, the cost of searching for a new job without the benefit of having existing clinical privileges, months of utilizing savings to supplement living expenses after Defendants disqualified Mr. Jones for the job scheduled to start on April 15, 2019, mental anguish and emotional distress, feelings of unjust treatment, reputational harm, anxiety, humiliation, and personal indignity.

**B.** Liquidated damages, interest, and all other damages as allowed under the law to all Plaintiffs;

**C.** The payment of attorney fees, costs, litigation expenses, expert witness costs, adverse tax consequences, front pay, back pay, and all other damages allowed under the law and equity including 42 U.S.C. § 1988; and

**D.** Punitive Damages for Defendants' reckless and callous indifference to Mr. Jones's constitutional right to due process and for Defendants' evil intent to deprive him of his right.

Dated this <u>18th</u> day of January 2022.

                              **BEST LAW PLLC**

                     By:   <u>/s/ Michael R. Merkelbach</u>
                          Ryan M. Best, WSBA 33672
                          Michael R. Merkelbach, WSBA 55389
                          Jacob A. Mark, WSBA 54280
                          Best Law PLLC
                          905 W. Riverside, Suite 409
                          Spokane, WA 99201
                          Phone: (509) 624-4422
                          Fax: (509) 703-7957
                          Email: bestlawpllc@bestlawspokane.com
                          Attorneys for Plaintiffs